## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DIVISION
### Richmond Division

ONTARIO LOGAN-PATTERSON,

       Plaintiff,

                                          Civil Action No.: 3:24-cv-526

v.

TRAVIS SCOTT WYATT,

       Defendant.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT WYATT'S MOTION FOR SUMMARY JUDGMENT

Trooper Travis Wyatt arrested a Black teenager for being in the wrong place at the wrong time. Ontario Logan-Patterson did not fit the description of the suspect and the only witnesses affirmatively stated he was not the suspect. Wyatt ignored the witnesses, telling the passengers of the Charger (all people of color) that "Y'all won't tell me if it is him or not, though. Y'all ain't gonna tell on your boy. I know how it is." With no evidence other than his own false identification to suggest Ontario was the driver of the car, Wyatt, days after the crash, obtained a juvenile detention order for Ontario because he "always get[s] [his] man."

Throughout this brief investigation, Wyatt ignored the constant explanations from Ontario and his mother that they were at a gathering that day and he physically could not have been driving the Charger miles away at the same time. They offered to show photos from the gathering or have Wyatt check Ontario's phone location history. He did neither and instead subjected Ontario to over a month in the Bon Air Juvenile Correctional Center, forever altering Ontario's educational and career paths and view of law enforcement. It was not until Ontario's family obtained Ring camera footage from a neighbor demonstrating that Ontario and his mother, Lakita Patterson, came outside

after the crash and watched the chase that Ontario had his charges dismissed. Data from Ontario's phone obtained by Wyatt during discovery only further confirmed that Ontario had been telling the truth about where he was that day.

Now, continuing his approach of ignoring everything Ontario and his mother state, Wyatt seeks summary judgment on the claims of false arrest, false imprisonment, and malicious prosecution on the contention that his version of events is correct. While a jury may well find that Wyatt is the one telling the truth on key disputes, it is improper for him to assert those facts as being undisputed at this stage. Especially when his own story has changed throughout the case as discovery disproved his earlier assertions. Even putting aside the internal inconsistencies, the fact that the state troopers tell one story and Ontario, his mother, and the passengers tell another is a classic dispute of material fact. At the scene, the troopers may have been entitled to ignore statements by Ontario and his family, but Wyatt cannot do so here.

Properly resolving all disputes of material fact in the Plaintiff's favor and drawing all reasonable inferences therefrom, a reasonable jury could find that Wyatt acted either intentionally, or at the least, made an unreasonable mistake, in arresting the wrong person (Ontario) on December 11, 2023. Five days later, without learning any further relevant information, Wyatt orchestrated Ontario's detention through material misstatements and omissions in his affidavit that were made intentionally, or at the very least with a reckless disregard for the truth. Based on those facts, the Court could further find that Wyatt violated clearly established law in doing so and is not entitled to qualified immunity. His motion for summary judgment should be dismissed and Ontario should be allowed to present his claims to a jury.

### Response to Defendant's Statement of Undisputed Facts

¶¶ 1-8. Not disputed.

¶ 9. Not disputed that Wyatt described the suspect that way on the radio. The jury will have to decide whether that description or Wyatt's later attempts to massage the description during his deposition are the true story. The jury will also have to decide whether Wyatt actually got a look at the suspect's face or not. *See* ECF 25.6, at 46-49, 85-86.[1]

¶ 10. Partially disputed. Wyatt lost sight of the suspect for an appreciable period. Indeed, he gave up on the chase and began walking back to his patrol car. *Id.* at 38. The dashcam video shows a significant amount of time passing between the suspect's arrival at the Charger and Wyatt's renewal of his chase of him. ECF 25.4 at 10:27-11:16.[2]

¶ 11. Partially disputed. While Wyatt says he saw the suspect throw a gun under the dumpster, he and other troopers initially searched in, not under, the dumpster. ECF 25.6, at 76-79; Deposition of Trooper Mikel Hana, attached as Exhibit 1, at 13.

¶ 12. Not disputed.

¶ 13. Not disputed, but misleading. The statement that the door was "left wide open" carries the suggestion that the suspect entered it. But Ontario and his mother exited, reentered, and closed the back door of their townhouse. *See* ECF 25.3, at 33, 36, 41, 44, 47. In his affidavit and other statements, Wyatt contends that the suspect entered the front of the townhouse. ECF 25.1; ECF 25.6, at 83.

¶ 14. Not disputed as to the contents of Wyatt's affidavit or the different explanation he gave at his deposition. But Plaintiff disputes that Wyatt saying, "he took off again towards the

---

[1] For documents filed using the ECF system, all page numbers in citations are to the superimposed numbers at the top of the page generated by the ECF system.

[2] Defendant Wyatt attached two full dashcam videos and excerpts from them as his Exhibits 4 and 19. Plaintiff's timestamps for ECF 25.4 and 25.19 will reference the full videos.

apartment complex and entered a single unit apartment," ECF 25.1, is the same as saying he saw the suspect enter an entranceway that only had one apartment door.

Further, the jury could find that Wyatt could not have seen this at all. The Patterson townhouse, which sits at the end of the townhouse row, has two entrances. ECF 25.7. The back door faces Commerce Road. *Id*. The front door faces East 9th Street and is significantly recessed from the corner of the house. *Id*. There is an alley between their townhouse row and the next row. *Id*. Hedges, porch pickets, and most importantly, the brick corner of the house obscure the front door completely when standing at the back of the house, such as beside the dumpster. ECF 25.8, at 2; Aerial View of the Patterson's Block, attached as Exhibit 2. To enter the townhouse, one would have to walk around the hedges and railing of the porch. ECF 25.6, at 138.

At deposition, Wyatt initially marked a spot by the dumpster near the back of the house where he claims to have stood and watched the suspect enter the front of the home. *Id.* at 113, 137; Exhibit 2. He also claims to have "watched the doors." ECF 25.6, at 114. However, Wyatt later admitted that one cannot see the front door from the spot he marked, though he then argued that he "was enough to the point where [he] could see the entranceway," expanding the area where he may have stood. *Id.* at 137. However, even in the expanded area indicated by Wyatt, there is no way to have been standing to be able to see someone enter the townhouse or even the entranceway, as the front door is concealed by the angle of the brick house corner, recessed door location, hedges, and porch pickets. ECF 25.8, at 2.

¶ 15. Not disputed, but incomplete. Wyatt told other troopers that the suspect had fled into the apartment "with the Christmas lights." ECF 25.6, at 151-152. But the Patterson townhouse had no Christmas lights; a different townhouse had the Christmas lights. Rear View of the Patterson's Townhouse, attached as Exhibit 3.

¶ 16. Disputed. Trooper Hana testified that he was at the front of the building – where any K-9 tracking would have occurred – and in "close proximity" to Layton, but he did not see Trooper Layton conducting a search. Exhibit 1, at 37-38, 46.

Additionally, any testimony from Trooper Layton about what the K-9 allegedly leading him to a specific location signifies would be expert testimony, and Trooper Layton was not designated as an expert. Layton's affidavit completed for this summary judgment motion demonstrates that his testimony would be that of an expert. His explanations of how certain actions by the dog indicate certain facts, as an example, *see* ECF 25.12, at ¶ 7, would constitute expert testimony.

¶ 17. Disputed. In his written statement from January 29, 2024, Trooper Layton twice stated that the dog went to the apartment next door to the Patterson home – 306 East Ninth Street, not the Patterson's home at 304 East Ninth Street. ECF 25.11, at 2. His attempt to brush off the discrepancy as a typo comes over a year after submitting his written statement, with no previous attempts to correct it. ECF 25.12, at 3-4. The jury will have to determine the validity of his claim that this was a typo.

¶ 18. Not disputed, but incomplete. Ms. Patterson testified at her deposition that when she opened her back door, Trooper Wyatt has his gun drawn and it was pointed at her. ECF 25.3, at 18, 46-48.

¶ 19. Not disputed.

¶ 20. Not disputed.

¶ 21. Partially disputed and incomplete. Plaintiff disputes this to the extent it states that Trooper Wyatt's identification of Ontario as the driver was correct. Further, Wyatt omits that both

Ontario and his mother stated that Ontario told Wyatt he was breathing heavily because his mom had called him downstairs saying a gun was pointed at her. ECF 25.2 at 35-36; ECF 25.3, at 18.

¶ 22. Not disputed.

¶ 23. Not disputed as to the first four sentences. As to the final sentence, Plaintiff does not dispute that Trooper Wyatt now offers that justification for ignoring the witnesses, but the jury will have to decide if that is accurate. When asked at his deposition why the passengers were not placed in handcuffs, Wyatt answered, "Because they were just passengers of the vehicle." ECF 25.6, at 59-60. Additionally, there is evidence in the record for a jury to find that Wyatt ignored the statements of the passengers because he believed that, as people of color, they were covering for a Black teenager. *Id.* at 126-129 (Trooper Wyatt's explanation for his saying that the passengers would not snitch on their "homeboys" was that he uses that phrase to refer to his friends regardless of race, though he could not specifically name anybody that he calls "homeboy"); ECF 25.3, at 19-20 (Ms. Patterson testified that Wyatt said "[t]hat's what you all say to help your people" and "you will say anything to help your kind because you all stick together"); ECF 25.14, at 3 (Trooper Morris remembered "words like 'thug' or 'those people' being used").

¶ 24. Not disputed, but incomplete. Wyatt omits much from his conversation with the passenger witnesses, including the following exchange:

Male passenger: "I don't – I've never … I promise you … that lady … that kid has nothing do with this, I promise you. I mean, maybe he was doing something else… maybe he was doing something else he wasn't supposed to be doing, but –" ECF 25.4, at 32:55-33:13.

Wyatt: "Y'all won't… or not, though… I – I know how it is. Y'all won't tell me if it is him or not, though. Y'all ain't gonna tell on your boy. I know how it is." *Id.* at 33:12-22.

Additionally, in the same conversation with Wyatt, the female passenger stated about Ontario, "That's just a little kid, that's not…" in reference to the suspect. *Id*. at 32:50-53.

¶ 25. Regarding the first two sentences, it is not disputed that Trooper Wyatt offered that explanation. It is disputed that such is accurate, as he also claimed to have no experience arresting juveniles, and that Ontario was the first juvenile he ever arrested. ECF 25.6, at 51-52, 95. Moreover, as discussed in response to Number 23, the passengers were not treated as suspects at the time.

¶ 26. Not disputed.

¶ 27. Not disputed. However, as to the last sentence, jogging for a few seconds back into your house is different than participating in an extended chase on foot.

¶ 28. Not disputed.

¶ 29. Not disputed, but incomplete. Ontario stated that he only consented because he thought he had to. ECF 25.2, at 80.

¶ 30. The first sentence is disputed. While Trooper Wyatt now states that was his reason, the jury could find otherwise. Wyatt claims that he did not take Ontario into formal custody the evening of the car chase because he did not know about the "juvenile process." ECF 25.6, at 159-160. But he did not ask any of the numerous other troopers on the scene for assistance. *Id*. at 160-62. Nor could he identify the person who later explained the process to him. *Id*. at 163. The second sentence is also disputed, as Ms. Patterson testified that two other Troopers did say "that they didn't think that Ontario was the guy." ECF 25.3, at 21.

¶¶ 31-34. Not disputed.

¶ 35. Not disputed, but incomplete. Ms. Patterson testified that Trooper Wyatt told her, "I'm coming to get my guy" and "I never lose my man" when he called her. *Id*. at 22.

¶¶ 36-37. Not disputed.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the movant, citing to supporting materials in the record, shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) & (c). The party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party must set forth facts, citing to particular parts of the record (although the court may also consider other materials in the record (Fed. R. Civ. P. 56(c)(3)), sufficient to show that there are genuine issues for trial. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)).

At summary judgment, the court "must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, at 659 (internal citations and alterations omitted). Summary judgment is further not appropriate even if there are no disputes as to the evidentiary facts, but the parties dispute the ultimate factual *conclusions* to be drawn therefrom. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991) (emphasis added).

## ARGUMENT

On December 11, 2023, Trooper Wyatt identified Ontario as the driver of the stolen Charger and arrested him. Ontario was not the driver of the car and there is conclusive proof of that, which was available to Wyatt at the time. Wyatt seems to have accepted this and now argues that he made a reasonable mistake. Contrary to his assertion, a reasonable jury could conclude Wyatt's mistake was unreasonable. The jury could further find that when Wyatt filled out an affidavit seeking a

detention order for Ontario, he intentionally, or with a reckless disregard for the truth, made materially false statements and omitted material facts. Accordingly, Ontario can prove all the elements of false arrest, false imprisonment, and malicious prosecution, thus Wyatt's motion for summary judgment should be denied.

In his memorandum supporting his motion, Wyatt repeatedly refers to his version of the events of December 11 as undisputed, even when that version conflicts with other evidence in the record. That is inappropriate for a summary judgment motion. Viewing the facts through the appropriate lens, the jury could conclude that Wyatt got a good look at the driver, including his face, and then when he lost the driver, whether out of frustration or another reason, he arrested a person in the general vicinity (Ontario) that he knew was not the driver. In other words, that he lied. Such intentional action constitutes a false arrest, and continuing the false identification in his affidavit constitutes malicious prosecution in violation of clearly established law.

In the alternative, the jury could conclude that Wyatt did not get a good look at the driver, only had a vague description, and then arrested the wrong person. In that situation, the arrest of Ontario was an unreasonable mistake of fact. And the later inclusion of the identification of Ontario in the affidavit without care for its accuracy, along with the material omission of the witnesses saying Ontario was not the driver, evinced a reckless disregard of the truth of the identification. This action would similarly violate clearly established law. And under either scenario, Wyatt's false claim that he saw the driver of the car enter the Patterson's townhouse adds to the unconstitutionality of the affidavit.

I.    **A reasonable juvenile in Ontario's position would not have felt free to leave in those circumstances, and therefore Ontario was under arrest on December 11, 2023.**

Wyatt argues that Ontario was not arrested on December 11 but merely detained. ECF 25, at 15. Because a reasonable juvenile in Ontario's position on that evening would not have felt free

to go, Ontario was under arrest. A person is considered under arrest when "under the totality of the circumstances, the 'suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). This test is primarily an objective one. *See Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). However, the Supreme Court has held that "a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go." *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011).[3] Accordingly, the Court held: "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test." *Id.* at 277. Wyatt was aware at the time that Ontario was a juvenile, ECF 25.6, at 51, 95, thus Ontario's age is relevant to this analysis.

The seventeen-year-old Ontario had his hands cuffed behind his back with multiple troopers around him. ECF 25.2, at 69-71. A Virginia State Police helicopter had been overhead during the chase. ECF 25.6, at 52-53. Trooper Wyatt placed him under arrest and had his gun out before putting on the handcuffs. *Id*. at 72. Ontario was then forced to walk outside in the cold, without a shirt, to a police car, where he was placed inside the front seat with the door shut and window rolled up. *Id.* at 36-38. Ontario was told repeatedly by Trooper Wyatt that he "was the guy." ECF 25.2, at 68. In the car, the Wyatt was "trying to get [Ontario] to say that [he] did it." *Id*. at 80. When Ontario asked if he was going to the jail, Wyatt responded, "I don't know yet."

---

[3] The test for when an investigative stop turns into an arrest is the same test for when a suspect is in custody for purposes of *Miranda*. *See Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir. 2001) (relying on a Supreme Court case dealing with custody for purposes of *Miranda* when defining when an investigative stop has turned into an arrest) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

Subtitled Excerpt of Wyatt Dashcam Video, attached as Exhibit 4 D, at 0:00-07.[4] And Ontario was asked to consent to a DNA swab. ECF 25.2, at 80[5] Combined with the fact that Ontario had just witnessed the car crash and subsequent chase, a reasonable seventeen-year-old in those circumstances would not feel that he had the right to get up and leave Trooper Wyatt's car. He was therefore under arrest.

## II. There is sufficient evidence in the record for a reasonable jury to find that Wyatt arrested Ontario on December 11, 2023 without probable cause and in violation of clearly established law.

To establish a § 1983 claim based on a Fourth Amendment violation for false arrest, Ontario must show that he was seized by Trooper Wyatt without probable cause. *English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024). Similarly, for his false imprisonment claim, Ontario must show that Wyatt restrained his physical liberty "without adequate legal justification." *W.T. Grant Co. v. Owens*, 149 Va. 906, 921 (1928). Because claims "for false imprisonment under Virginia law frequently rise and fall with the reasonableness of the arrest/search underlying such claims," Plaintiff will address them together. *See Vollette v. Watson,* 937 F. Supp. 2d 706, 726 (E.D. Va. 2013).

For this claim, the focus is on the facts known to Trooper Wyatt at the time he made the arrest. However, in his filing, Wyatt seems to take this to mean that the Court must accept his assertions as to what those facts were. That is not true. If there are genuine disputes of fact, and the resolution of those disputes would affect the legal question of whether probable cause (or reasonable articulable suspicion) existed, the jury must resolve the disputes. A reasonable jury

---

[4] *See also* Transcription of the Wyatt Dashcam Video Excerpts, attached as Exhibit 5. Defendant reviewed and agreed to the validity of this transcription; Additional Subtitled Wyatt Dashcam Excerpts at Exhibit 4 B-D. Video excerpts 4 A-D correspond to Clips 1-4 in Exhibit 5.

[5] While this analysis is an objective one, the fact that Ontario thought he had to say yes to the DNA swab request, ECF 25.2, at 80, supports the conclusion that a reasonable teenager would not have felt they could leave in his situation.

could determine that much of what Wyatt has asserted is not true. His account of the events of that day has changed over time. One of his main contentions the jury could find physically could not have happened. And his retelling is contradicted by Ontario, his mother, and in some instances, his fellow officers. Accordingly, the analysis is not limited to Wyatt's version of events.

### A.    Wyatt did not have probable cause to arrest Ontario on December 11, 2023 when he handcuffed him at the door.

Probable cause to justify an arrest is "an objective standard of probability that reasonable and prudent persons apply in everyday life." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). It is the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense*." Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).[6] While whether probable cause exists is a legal question, what the officer knew or reasonably believed at the time is a question of fact. *See Harris v. Town of S. Pines*, 110 F. 4th 633, 639 (4th Cir. 2024). And under Virginia law, if "there is a conflict of evidence concerning probable cause, the issue of whether probable cause existed is a question reserved for the jury's determination." *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 110 (2021). Here, probable cause existed that the driver had committed a crime. The question is whether there was probable cause for Wyatt to believe that Ontario had committed a crime (in other words, that he was the driver of the stolen car). Evidence in the record allows a reasonable jury to conclude that, under either scenario discussed above, Wyatt acted unreasonably in arresting Ontario, and he therefore violated the Fourth Amendment.

---

[6] Virginia similarly defines probable cause as "knowledge of such facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Lewis v. Kei*, 281 Va. 715, 723 (2011) (internal quotation marks omitted). Plaintiff does not see a distinction between the two standards and will treat them as the same.

First, the jury could find that Wyatt knew the whole time that he arrested the wrong person, which would, of course, constitute a false arrest. The jury could reasonably find that Officer Wyatt got a good look at the driver of the car multiple times from a short distance away and then arrested a totally different person a short while later. In that situation, the jury could reasonably conclude that this was not a mistake, but an intentional choice. At his deposition, Wyatt relayed that he followed the suspect for a while, at times getting within 15 feet of the person. ECF 25.6, at 39. He got that close to the person multiple times. *Id*. at 40. During the chase, there was nothing covering the suspect's face. *Id*. at 44. The suspect at one point turned and faced Wyatt when they were on opposite sides of a fence. *Id*. at 39. In his motion for summary judgment, Wyatt argues that he "viewed the suspect from as close as 15 feet" and "at least partially observ[ed] the suspect's skin and face." ECF 25, at 18. The jury could reasonably find that this is not an instance where an individual met a general description and a mistake was made, but rather one where Trooper Wyatt got a good look at the face of the suspect, a person who the witnesses from the car say is not a child, ECF 25.4, at 32:50-33:13, and whose face would therefore presumably look vastly different from a juvenile's,[7] and instead arrested a nearby Black teenager.[8]

If the jury concludes that Wyatt knew he had the wrong person when he arrested Ontario, then Wyatt did not have probable cause to believe that Ontario was the driver of the car.

---

[7] Because Wyatt decided to pin the charges on Ontario, no further investigation or search for the actual perpetrator was done and that person has still not been charged (and thus presumably has not been found either). ECF 25.6, at 60.

[8] While a motive for Wyatt's actions is not necessary, it could have been his frustration at losing the suspect. Or it could have been racial animus. ECF 25.6, at 127-129 (Wyatt's explanation for his saying that the passengers would not snitch on their "homeboys" was that he uses that phrase to refer to his friends regardless of race); ECF 25.3, at 19-20 (Ms. Patterson testified that Wyatt said "[t]hat's what you all say to help your people" and "you will say anything to help your kind because you all stick together"); ECF 25.14, at 3 (Trooper Morris remembered "words like 'thug' or 'those people' being used").

Accordingly, that question of material fact, going to the existence of probable cause, prevents granting summary judgment to Trooper Wyatt on the false arrest and state law false imprisonment claims.

If, on the other hand, the jury finds that Trooper Wyatt did not get a good look at the suspect and instead arrested Ontario based on his matching a vague description, that would constitute a mistake of fact that the jury could find unreasonable. *See* ECF 25, at 17 (stating that the relevant legal question here is whether the "mistake of identity was a reasonable one") (quoting *Schultz v. Braga*, 290 F. Supp. 2d 637, 649 (D. Md. 2003)). Wyatt correctly asserts that reasonableness in this context is a question of law, not fact. However, to the extent they are disputed, the predicate facts known or reasonably known to the officer at the time are questions of fact. *See Hupp v. Cook*, 931 F.3d 307, 325 (4th Cir. 2019) ("disputes of fact preclude a finding at this stage that a reasonable officer would have believed that probable cause existed"). And because the question of what Wyatt knew or reasonably believed at the time is a question of fact, Wyatt cannot rely on disputed facts in saying that he had probable cause.

To the extent that this was a mistake, it was objectively unreasonable. Trooper Wyatt described the driver as "black male, Army pants, ski mask on,[9] white shirt." Ontario was shirtless, not wearing Army or camouflage pants, and not wearing a ski mask when he was arrested. ECF 25.2, at 16, 35. Ontario and his mother describe the suspect as being on the shorter side, with Ontario estimating him to be approximately five feet, seven or eight inches. *Id.* at 32; ECF 25.3,

---

[9] While Wyatt now says it could have been a durag, *see, e.g.*, ECF 25, at 22, those are very different pieces of clothing, and the jury could find that this is an excuse he has concocted after the fact. Especially because Ontario testified at his deposition that the suspect was wearing a black Nike ski mask. ECF 25.2, at 31.

at 40. Ontario is approximately six feet, four inches. *Id.* at 39. The only part of the description Ontario met was Black and male.

In addition to this mismatch, Wyatt relies on facts that are not inherently suspicious. The fact that Ontario emerged shirtless is not suspicious given that he was being asked to urgently come to the door by his concerned mother who had a gun in her face. ECF 25.2, at 35 ("When she called my name, I just yelled back, and she said come downstairs. They have guns aimed at me."); ECF 25.3, at 46 ("I called upstairs and told my son to hurry, come down, because he got that gun in my face."). Nor is it suspicious for someone to change out of the clothes they wore outside once they are home for the day. In the context of reasonable articulable suspicion, a lower standard, the Fourth Circuit has warned about government agents using "innocent facts as indicia of suspicious activity." *Wingate v. Fulford*, 987 F.3d 299, 311 (4th Cir. 2021) (quoting *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013)).

Consistent with his overall approach, Wyatt again relies on disputed facts here. Wyatt attests that when he asked Ontario why he was out of breath, Ontario said it was because he was doing the dishes, ECF 25, at 18. However, Ontario and his mother dispute this. Ontario was asked at his deposition what he said when Trooper Wyatt asked him why he was breathing so heavily. He responded: "Because my mom said y'all had guns aimed at her." ECF 25.2, at 36. Ms. Patterson said in her deposition that Ontario told Wyatt he was breathing heavily because "my mom just said something about a gun being pointed at her." ECF 25.3, at 18. The jury may believe Trooper Wyatt's version at trial, but he cannot claim that this fact is undisputed at this stage, and he cannot factor it into the probable cause analysis.

The K-9 evidence is also disputed. The jury could find that Trooper Layton is not a reliable narrator about the events of December 11. Trooper Layton states that he saw no guns drawn in the

area. ECF 25.11, at 4; ECF 25.12, at 5. But Trooper Hana, who was near Trooper Layton at the time, wrote in his statement that he drew his own gun. ECF 25.16, at 2; Exhibit 1, at 37, 44. Ontario and his mother also testified at their depositions that Trooper Wyatt's gun was out before he arrested Ontario. ECF 25.2, at 72; ECF 25.3, at 18. And Wyatt says Layton was at the door with him when he arrested Ontario. ECF 25.6, at 113.[10] At any rate, even if the jury concludes that Layton is telling the truth, there is no evidence that Wyatt knew about this alleged K-9 evidence when he arrested Ontario. At his deposition, he did not mention any K-9 evidence, nor did he mention having any discussion with Layton prior to arresting Ontario or while he had Ontario under arrest. *See* ECF 25.6.

Perhaps most importantly, a jury could find that Wyatt's claim about witnessing the suspect enter the Patterson's townhouse is not accurate. In his memorandum in support of his motion for summary judgment, Wyatt attempts to tone down his prior statements, saying that he "believed the suspect ran into Plaintiff's residence through the front door." ECF 25, at 17. But this qualifier "believed" appears in none of his prior statements. Not in his affidavit seeking a detention order. ECF 25.1 (the suspect "took off again towards the apartment complex and entered a single unit apartment"). Nor in his responses to interrogatories. ECF 25.13, at 3 ("After watching Plaintiff enter the front door of the townhouse…"). Nor at his deposition. ECF 25.6, at 165 ("I seen him go in the entranceway."). Now, in his declaration for summary judgment purposes, he says he "concluded the suspect had entered the residence." ECF 25, at 5. Wyatt began by saying he saw the suspect enter the front door. Then he changed that to entranceway. Now he is backing off that

---

[10] Plaintiff's Response to Defendant's Statement of Facts Numbers 16 and 17 contain further reasons that Layton's testimony could be discounted.

claim as well by adding a qualifier to his contention. A reasonable jury could find the shifting nature of this assertion itself to be evidence of its falsity.

Regardless of which version Wyatt puts forward at trial, the jury could find that none of them are true; that from where Wyatt was standing, he physically could not have seen anyone enter the front door or the entranceway of the Patterson's townhouse. As explained in Plaintiff's Response to Defendant's Statement of Facts Number 14, *supra*, the angle from which Wyatt was viewing the Patterson's townhouse prevented him from being able to see the entranceway or the doorway. Wyatt may well have seen the suspect running in-between the homes on 9th Street, *see* ECF 25.7, but he could not have seen the front door or the entranceway to the Patterson's townhouse from where he was standing. Lastly, the jury could also infer that Wyatt did not see anyone enter the townhouse from the fact that phone data conclusively shows that Ontario was not the person driving the car, and no other males were in the townhouse.

In sum, Ontario being a male with dark skin is the only connection he had to the driver of the stolen car. Wyatt's constantly changing story about exactly what he saw only bolsters the inference that he is not a reliable narrator. The jury could reasonably find that he either intentionally arrested the wrong individual or made an unreasonable mistake in doing so. In either instance, he lacked probable cause and thus violated the Fourth Amendment. As explained below, he did so in violation of clearly established law and therefore is not entitled to qualified immunity.

**B.    If this Court holds that Ontario was not under arrest on the evening of December 11, Defendant Wyatt also lacked reasonable articulable suspicion to detain Ontario.**

While reasonable articulable suspicion is a relatively low bar, it does not allow officers to detain any random Black teenager in the general area. *See United States v. McCoy*, 405, 413 (4th Cir. 2008) ("an officer's articulated facts must in their totality serve to eliminate a substantial

portion of innocent travelers before reasonable suspicion will exist"). The reasonable suspicion sufficient to perform an investigatory stop must be "justified by an objective basis to suspect that the particular person" committed a specific crime. *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023). As the Fourth Circuit has explained, "Though other factors contribute to the totality-of-the-circumstances analysis, individual behavior is the *only substantial basis* for particularized suspicion." *Milla v. Brown*, 109 F.4th 222, 230 (4th Cir 2024) (emphasis added) (citing *United States v. Massenburg*, 654 F.3d 480, 491 (4th Cir. 2011)). And, like probable cause, an investigatory stop done based on a mistake of fact will not violate the Fourth Amendment only if that mistake of fact was reasonable. *See United States v. Arias*, 213 Fed. Appx. 230, 232-33 (4th Cir. 2007) (unpublished).

Once the material disputes of fact are resolved in favor of Ontario, as they must be, the facts known to Wyatt at the time he seized Ontario (as opposed to the facts he alleges that he knew) do not support a finding that he possessed a reasonable articulable suspicion that Ontario was the driver of the Charger. For the same reasons discussed above, Wyatt either knowingly detained the wrong person or made an unreasonable mistake of fact. Under either option, he accordingly did not possess reasonable articulable suspicion. In addition, the lack of probable cause (or reasonable articulable suspicion) renders Wyatt's restraint of Ontario's liberty without legal justification and, therefore, a false imprisonment under Virginia law.

**C. Defendant Wyatt violated clearly established law of which any reasonable officer in his position would have been aware and he is not entitled to qualified immunity on the false arrest claim.**

The defense of qualified immunity ensures that, before officers are held liable, they have "notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). It precludes liability if the officer's "conduct does not violate

clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018).

It should be uncontroversial to assert that the right to be seized only on probable cause was clearly established at the time Defendant Wyatt forced Ontario into his police car. *See Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996); *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 54 (4th Cir. 2017).[11] The same is true for reasonable articulable suspicion. *Milla v. Brown*, 109 F.4th 222, 233 (4th Cir. 2024) (Fourth Circuit caselaw as of 2019 required "'reasonable suspicion supported by articulable facts that criminal activity may be afoot' to justify an investigative detention.") (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Whether Trooper Wyatt acted intentionally or made an unreasonable mistake of fact, Wyatt violated clearly established law by arresting, or detaining, an innocent person.

In this situation, when probable cause is lacking, qualified immunity can be granted only when the officer "*reasonably*, but mistakenly, concluded that probable cause [or reasonable suspicion] was present." *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018) (quotation omitted) (emphasis added); *see also Amisi v. Brooks*, 93 F.4th 659, 667 (4th Cir. 2024) ("Just as we decline to grant qualified immunity when officers make unreasonable mistakes of law, so too with unreasonable mistakes of fact."). An officer who intentionally arrests the wrong person has not made a reasonable mistake. And even if the jury finds that Wyatt did not act intentionally, for the same reasons stated above, *supra* at 14-18, questions of material fact preclude a finding at this

---

[11] Two weeks after *Humbert* was issued, an amended opinion was released. *See Humbert Mayor & City Council of Balt. .City*, No. 15-1768, 2017 U.S. App. LEXIS 16104 (4th Cir. Aug. 7, 2017). The amended opinion appears to have only corrected scrivener's errors, and future cases have cited back to the published version of the *Humbert* opinion. Accordingly, Plaintiff has cited to the published version as well, as it is substantively the same as the amended one available only online.

stage that Wyatt made a reasonable mistake of fact when he arrested Ontario on December 11. He accordingly cannot be granted qualified immunity at this stage.

## III.    A reasonable jury could find that Trooper Wyatt maliciously orchestrated the prosecution of Ontario for a crime he did not commit.

Under both federal and Virginia law, malicious prosecution requires proof that the defendant (1) caused the seizure of the plaintiff pursuant to legal process; (2) that seizure was unsupported by probable cause; and (3) criminal proceedings terminated in the plaintiff's favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *Lewis v. Kei*, 281 Va. 715, 722 (2011). Virginia law additionally requires proof of malice, a legal term of art in this context. *Lewis v. Kei*, 281 Va. 715, 722 (2011).

Trooper Wyatt does not contest that Ontario was seized and that criminal proceedings terminated in his favor. That leaves only four contested issues: (1) whether probable cause existed for the arrest; (2) whether the detention order signed by the intake officer cuts off the causal chain; (3) whether Wyatt is entitled to qualified immunity; and (4) whether Wyatt acted with malice (as that term is defined by the Virginia Supreme Court). Plaintiff will address each in turn.

### A.    Probable cause did not exist sufficient to arrest Ontario on December 15, 2023.

Trooper Wyatt did only a cursory investigation in the time between releasing Ontario and obtaining a detention order five days later. He had brief communications with the woman to whom the gun under the dumpster was registered to and with Car Lotz, the Stafford County business that reported the Dodge Charger as stolen. ECF 25.6, at 93-94, 157. Wyatt made no effort to see if Ontario was in the area when the Charger was stolen. *Id*. at 56. Or if he had any connection to Jada Hall, the owner of the gun. *Id*. at 93. Nothing Wyatt discovered added to the case against Ontario. *Id*. at 95-96. This is not surprising, given that Wyatt had already decided to later arrest Ontario

when he released him on December 11. Exhibit 4 D, at 13:19-22 (Wyatt told Ontario he needs his address "[s]o when I get a warrant, I just know where you live").

Because he did not have probable cause to arrest Ontario on December 11, and he learned nothing new after that, Wyatt still did not have probable cause to seek his arrest on December 15. While he argues that he did have probable cause on December 11, Wyatt does not seem to contest that if he did not have probable cause then, that he did not have probable cause five days later, either. *See* ECF 25, at 19-20. In other words, he does not put forward any additional evidence that aided in the probable cause determination on December 15. Rather, he argues that the intake officer's finding of probable cause cuts off the causal chain here. This claim is based on disputed material facts and should be denied.

In most cases, a warrant (or similar document signed by a neutral third-party) will defeat a claim of malicious prosecution. But this rule does not apply when the officer made "'material false statements in the warrant application'" either deliberately or with a "'reckless disregard for the truth.'" *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Or if the officer omits "'material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading.'" *Humbert*, 866 F.3d at 556 (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). To determine the materiality of an omission or misrepresentation, the court must add in the omissions or "excise the misrepresentation and consider whether there would have been probable cause based on the 'corrected' evidence." *English v. Clarke*, 90 F.4th 636, 648 (4th Cir. 2024).[12]

---

[12] The same general rule applies under Virginia law. *See Niese v. Kios*, 216 Va. 701, 801 (1976) ("Issuance of the warrant does not conclusively prove probable cause."). If the officer "did

If the jury finds that Wyatt knew that Ontario was the wrong person, the analysis is quite straightforward. Lying about identifying someone as the suspect in an affidavit is a false statement of material fact. Without Wyatt's identification of Ontario as the driver, the affidavit does not support a finding of probable cause. That identification was the basis for the arrest and knowingly identifying the wrong person is a *Franks* violation.

On the other hand, if the jury finds that Ontario merely matched a vague description, then Wyatt's identification of Ontario as the driver progresses from an unreasonable mistake to a falsity provided with reckless disregard for the truth over the course of the investigation (what little of one there was). Plaintiff asserts that Wyatt did not have probable cause to arrest Ontario on December 11. However, even if he did, and that mistake was reasonable when he first grabbed Ontario on the evening of December 11, by December 15, and indeed by later that evening on the December 11, Wyatt had more information and "much of what he knew was highly pertinent to both the existence of probable cause and to the claim of qualified immunity." *Khoraki v. Longoria*, No. 3:22-cv-70, 2023 U.S. Dist. LEXIS 49115, *18 (E.D. Va. March 22, 2023). But Wyatt instead stuck to his story and omitted the facts that did not match the story in his affidavit.

The passengers in the stolen car, who had observed the driver up close for a lengthy period, told Wyatt that Ontario, although of the same general build, was not the driver. *See* Plaintiff's Response to Defendant's Statement of Facts Numbers 23 and 24. In his motion for summary judgment, Wyatt contends that these individuals were "suspects," and thus he could ignore their "self-serving statements." ECF 25, at 18-19 (quoting *Robinson v. Cook*, 706 F.3d 25, 37 (1st Cir. 2013)). However, at his deposition, Wyatt said that those people in the car were not placed in

---

not make a full disclosure" to the neutral party, then they are not entitled to any protection. *Evans v. Michaelson*, 146 Va. 64, 68 (1926).

handcuffs because "they were just passengers of the vehicle." ECF 25.6, at 59-60. The Court does not need to accept this post-hoc rationalization raised for the first time at summary judgment.

At trial, Wyatt is welcome to argue to the jury that what he says now is the truth, and these people who were not arrested or even further questioned about this crime were actually suspects in the crime. But the jury will have to decide if the passengers were witnesses (as they were treated by all involved up until this point) or suspects (as Wyatt now contests for the first time). The jury will also have to weigh Wyatt's current assertion about why he ignored the passengers against his contemporaneous statement that he was ignoring the witnesses because "[t]hey're not gonna snitch on their, you know, homeboys and stuff." ECF 25.13, at 5.[13]

In the time between December 11 and 15, Wyatt did not seek to obtain: written statements from the passengers; phone data for those passengers; phone location data from Ontario's cell phone;[14] the photos from the family gathering that Ontario attended on December 11, 2023; video from the neighbor's Ring camera;[15] license plate data to determine if the stolen Charger had ever been parked near Ontario's home; fingerprints from the stolen car; or any evidence that would draw a connection between Ontario and the stolen Charger. ECF 25.6, at 57, 69, 70, 72, 73, 76, 98.

Some of this information Wyatt says he was not obliged to investigate or include. While it is true that officers need not run down every lead or allow a suspect to dictate an investigation, failure to investigate exculpatory leads can be relevant to the existence of probable cause. *See Clipper v. Takoma Park*, 876 F.2d 217, 219-20 (4th Cir. 1989). In *Sevigny v. Dicksey*, the Fourth Circuit cited approvingly the Seventh Circuit's statement that "[a] police officer may not close his

---

[13] As discussed above, *supra*, at 13 n. 8, the jury will also have to determine if this statement was racially neutral, as Wyatt contends.

[14] *See* Defendant's discovery findings with Ontario's Location Data Analysis Summary, attached as Exhibit 6 A-B. *See also* Ontario's phone location record, attached as Exhibit 7.

[15] *See* Ring Camera Video, attached as Exhibit 8.

or her eyes to facts that would help clarify the circumstances of an arrest." *Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)). *See also Wadkins v. Arnold*, 214 F.3d 535, 541 (2000) ("Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause."). Here, the evidence discussed above was readily available and Wyatt just chose not to pursue it.

Despite all this evidence further demonstrating that he had made, at the very least, an unreasonable mistake in arresting Ontario, Wyatt persisted in identifying Ontario as the driver of the stolen car. That constitutes a reckless disregard for the truthfulness of that identification. Wyatt makes much of the fact that the word "conclusively" is not used in the affidavit but is by Plaintiff. ECF 25, at 22. But Plaintiff is unsure how Wyatt's statement, "I identified him as the same person who was driving the vehicle and who took off on foot," contains any ambiguity. ECF 25.1. Wyatt's assertion that the intake officer is supposed to know that "identified" in this context only means that Ontario matched a general description is unavailing.

The incorrect identification is not the only materially false statement made intentionally or with a reckless disregard for the truth. As discussed above, *supra*, at 16-17, and in Plaintiff's Response to Defendant's Statement of Facts Number 14, Wyatt could not have seen the suspect enter the Patterson's townhouse as he claims he did in his affidavit. Further, the failure to include that the passengers in the car said that Ontario was not the driver is a material omission. In sum, had Wyatt provided an accurate affidavit, at best he could have alleged in support of his assertion of probable cause that: (1) Ontario matched the general physical build of the suspect; and (2) Ontario was in a townhouse in the general vicinity of where Wyatt saw the suspect running by. That is not sufficient for probable cause.

Wyatt's affidavit rises and falls with his identification of Ontario as the suspect. That identification is a material fact. We now conclusively know that his identification was wrong. The only question is whether it was made knowingly or with a reckless disregard for the truth. As explained, material disputes of fact mean that a reasonable jury could answer that question either way. Accordingly, Wyatt's motion for summary judgment must be denied.

**B.    Defendant Wyatt violated clearly established law in orchestrating the detention of Ontario and he is therefore not entitled to qualified immunity.**

As the Fourth Circuit said in *Miller v. Prince George's County* in 2007, over a decade before the facts at issue in this case, the law is "unquestionably clearly established…that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." *Miller v. Prince George's County*, 475 F.3d 621, 631-32 (4th Cir. 2007) (collecting cases). Accordingly, no reasonable officer "could believe that the Fourth Amendment permitted such conduct." *Id*. at 632. *See also Khoraki v. Longoria*, No. 3:22-cv-70, 2023 U.S. Dist. LEXIS 49115, *29-32 (E.D. Va. March 22, 2023) (discussing *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000); *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988); and *Clipper v. Takoma Park, Md.*, 876 F.2d 17 (4th Cir. 1989); *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) ("An officer who lies to secure a probable-cause determination can hardly be called reasonable.").

A reasonable officer in Trooper Wyatt's position would be aware that knowingly making false statements to obtain a juvenile detention order, or making those statements with a total lack of regard for their truthfulness, as well as omitting material facts from the affidavit for that detention order, violates the Fourth Amendment. Accordingly, if the jury determines that Wyatt lied or acted with a reckless disregard for the truth in identifying Ontario as the driver of the car, stating that he could see the suspect enter the front door of the Patterson's townhouse, and failing

to mention that the witnesses said Ontario was not the suspect, Wyatt would not be entitled to qualified immunity.

It is worth noting that Wyatt's listing of the "undisputed circumstances Trooper Wyatt confronted," ECF 25, at 29, contains numerous facts that are in dispute.[16] To avoid repeating much of what has been said already, only the most glaring ones will be discussed. As explained above in Plaintiff's Response to Defendant's Statement of Facts Number 14, *supra*, Wyatt's contention that "the suspect ran up to the threshold of the front door of Plaintiff's residence and disappeared therein," ECF 25, at 29, is disputed. His contention that "a police canine tracked to Plaintiff's front door," *Id.* at 29, is also disputed. Exhibit 1, at 46. Trooper Hana said he did not remember a track even happened where he was. *Id*. at 45-46. Wyatt claims that "Plaintiff offered a suspicious story inconsistent with being out of breath—that he was washing dishes." ECF 25, at 29. Ontario says he told Wyatt that he was out of breath because his mother said a gun was aimed at her and he started to panic. ECF 25.2, at 35-36. Ms. Patterson similarly testified that Ontario told Wyatt he was breathing heavily because, "well, my mom just said something about a gun being pointed at her." ECF 25.3, at 18. Running down the stairs in panic will make someone be out of breath. While qualified immunity is a question of law, the facts upon which that determination is made are questions of fact. Trooper Wyatt's belief that his version of events is correct does not make it undisputed and, at this summary judgment stage, all inferences and any disputes of fact must be

---

[16] Some of them are not appropriate facts for probable cause. As the Fourth Circuit has explained, an officer must "assemble *individualized* facts that link the suspect to the crime." *Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017). Putting aside the validity of Wyatt's after-the-fact assertion about juveniles being enlisted to drive stolen cars, ECF 25, at 29, that "fact" is not individualized to Ontario at all. It implicates every juvenile in the general vicinity.

Moreover, while courts must "give due weight to an officer's commonsense judgments and inferences from the facts," they do not need to "defer to an officer's inchoate sense of suspicion." *United States v. Critchfield*, 81 F.4th 390 (4th Cir. 2023).

resolved in the non-moving party, Ontario's, favor. Viewing the facts in favor of Ontario and drawing all reasonable inferences therefrom, a reasonable officer in Wyatt's position would have known that orchestrating the detention of Ontario on December 15 violated clearly established law.

      **C.**    **A reasonable jury could find that Defendant Wyatt acted with, at the very least, legal malice in seeking the arrest and prosecution of Ontario.**

The term malice in this context is quite misleading. Plaintiff does not need to demonstrate that Wyatt acted with "actual spite, hatred, ill will, or grudge against or desire to injure." *Freezer v. Miller*, 163 Va. 180, 202-07 (1934). Instead, malice is defined as "any *controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333 (1998) (emphasis in original). Additionally, in what the Virginia Supreme Court sometimes refers to as "legal malice," "a jury may infer malice from a lack of probable cause." *Giant of Virginia, Inc. v. Pigg*, 207 Va. 679, 685 (1967); *see also Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 111 (2021) (citing *Reilly v. Shepherd*, 273 Va. 738, 733 (2007) and *Freezer*, 163 Va. at 204). Lastly, whether Wyatt acted with malice is a question of fact. *Dill*, 300 Va. at 112.

A reasonable jury could find that Wyatt caused the detention of Ontario for a reason other than out of a good faith desire to punish the guilty. The lack of probable cause alone makes this a jury question under Virginia law, as the jury is entitled to use that lacking as evidence of malice itself. Further, the racially motivated statements made by Wyatt at the scene, as well as his statements to Ms. Patterson when he called her after obtaining the detention order for her son, would allow the jury to conclude that Wyatt's actions were borne out of animus towards Ms. Patterson or Ontario. Whether this animus was racially based, borne out of frustration at his failure to catch the actual suspect, or based on some other frustration at Ontario or his mother for the events of December 11, is irrelevant. What matters is that Wyatt exercised the awesome power of

the state and forever altered the path of a high schooler's life for an improper purpose. A reasonable jury could find that he committed malicious prosecution under Virginia law.

\*     \*     \*

Relying on disputed material facts and an incomplete account of events, Wyatt seeks summary judgment on the theory that his actions were reasonable. Ontario's claims against Wyatt are highly fact-specific and cannot be resolved without a jury making credibility determinations regarding the testimony of Ontario, Lakita Patterson, Wyatt, and others. If even some of those determinations go against Wyatt, there is sufficient evidence for the jury to find in Ontario's favor on all of his claims. Against such a backdrop, summary judgment cannot be granted.

Respectfully submitted,

ONTARIO LOGAN-PATTERSON

By: _____/s/ Danny Zemel_____
Counsel

Mark J. Krudys (VSB# 30718)
Danny Zemel (VSB# 95073)
THE KRUDYS LAW FIRM, PLC
Truist Place
919 East Main Street, Suite 2020
Richmond, Virginia 23219
804.774.7950 Phone; 804.381.4458 Fax
mkrudys@krudys.com; dzemel@krudys.com
*Counsel for Plaintiff*

**<u>Certificate of Service</u>**

I hereby certify that on this 26th day of May 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing to all counsel of record.

By:    <u>/s/ Danny Zemel            </u>
              Counsel